**Dated: January 06, 2010**
**The following is ORDERED:**



_____
Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

NOT FOR PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

In Re:

JOE NATHAN MASSEY,                    Case No. 09-81220-TRC
PATRICIA LYNN MASSEY,                 Chapter 7

    Debtors.

### ORDER GRANTING MOTION FOR ABANDONMENT AND RELIEF FROM THE STAY AND GRANTING OBJECTION TO EXEMPTION

On December 16, 2009, there came on for evidentiary hearing Creditor Telcoe Federal Credit Union's Motion for Abandonment and Relief from Stay (Docket Entry 14) with Debtors' Response (Docket Entry 25), and Telcoe's Objection to Debtors' Claim of Exemptions (Docket Entry 18) with Debtor's Response (Docket Entry 23). Debtors were present with their attorney, Thomas Wright, and Kenneth W. Cowan appeared as counsel for Telcoe Federal Credit Union. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). For reasons set forth below, the Court grants Telcoe Federal Credit

EOD 1/6/10 by tmc

Union's Motion and Objection.

Debtors filed this case on July 27, 2009. The Chapter 7 Trustee filed a Report of No Distribution, and abandoned any assets of the estate. The Debtors were discharged on November 10, 2009. Pursuant to 11 U.S.C. § 362(c)(2)(C), the automatic stay terminates upon discharge, however, the parties agreed to extension of the stay under § 362(e)(2)(B). The Court will proceed to determine the issues presented in Telcoe's Motion and Objection as requested, and to ensure that Telcoe may pursue recovery of collateral without fear of violating the discharge injunction under 11 U.S.C. § 524(a).

Prior to filing bankruptcy, Mrs. Massey opened an account with Creditor Telcoe Federal Credit Union ("Telcoe"). According to Ken Sullivan, collections manager for Telcoe, Mrs. Massey opened her account in 1990 to obtain a Mastercard credit card. He testified that a cross-collateralization clause included in later loan documents between Mrs. Massey and Telcoe related back to the opening of her credit union account in 1990. He cited a clause in the Credit Application that Mrs. Massey signed on May 11, 1991, which stated: "I understand and agree that the Credit Union has the authority to impress and enforce a lien on all present and future shares in my name to the extent of that portion of the loan balance which may be in default . . . ."

In 2005, Mrs. Massey applied for additional credit with Telcoe. Telcoe presented copies to the Court of an Application for All Credit ("Application"), a Simplified Loan Program Agreement and Disclosure ("Agreement"), and a Simplified Loan Program Loan Disbursement Voucher ("Voucher") that were each signed by Patricia Massey on 6/16/05. Mrs. Massey borrowed $25,105.43 from Telcoe for the purchase of a 2005 Chevy Trailblazer, and granted Telcoe a security interest in the Trailblazer. The Application included a pledge from Mrs. Massey to Telcoe of all

present and future shares in any Credit Union account in which Mrs. Massey had an interest. The Agreement included the following statement: "Property securing any advance now or in the future will secure all amounts owed for all sub-account advances under the Plan or under any other Agreement, including credit card loans, with the Credit Union now or in the future." Mr. Sullivan stated that this was a cross-collateralization clause that meant that the collateral for the Trailblazer loan secured all other loans Mrs. Massey may receive that were open at the same time as the car loan. The Voucher listed the Trailblazer as the collateral for the loan. Mr. Sullivan cited a similar cross-collateralization clause appearing on the second page of the Voucher:

> This interest secures repayment of this advance as well as any other amounts you owe or will owe the Credit Union under the terms and conditions of your Credit Plan Agreement. It also secures any other loans you have with the Credit Union now or in the future, and any other amounts you owe the Credit Union for any reason now or in the future.

The front page of the Voucher also states that by signing and accepting the loan proceeds, the Borrower acknowledges that she is bound by the terms of the security agreement, including the cross-collateral provision. Telcoe filed a lien on the vehicle, which was noted on the title. Mr. Sullivan also stated that this lien has never been released.

Mr. Sullivan testified that Mrs. Massey applied for and received additional loans from Telcoe after the Trailblazer loan. Telcoe issued Mrs. Massey a MasterCard credit card on April 13, 2007, with a credit limit of $ 1,000. The credit card agreement contained the following provision: "If you have other loans or credit extensions from Issuer, or take out other loans or credit extensions with Issuer in the future, collateral securing those loans or credit extensions will also secure your obligations under this agreement." The payoff amount of this loan as of August 26, 2009, was $ 1,650.80.

Document    Page 3 of 7

Another Loan Agreement was executed in June of 2007. This Loan Agreement included the same statement that was included in the 2005 Agreement: "Property securing any advance now or in the future will secure all amounts owed for all sub-account advances under the Plan or under any other Agreement, including credit card loans, with the Credit Union now or in the future."

A "signature loan"[1] was made on May 2, 2008, for an additional $1,500, bringing her loan balance at that time to $ 4,961.40, excluding her MasterCard account. The payoff amount of this loan as of August 26, 2009, was $ 4,170.22. This Voucher included the same acknowledgment on page 1 of the cross-collateral provision as well as the provision itself on page two as were included in 2005 Voucher for the original loan secured by the Trailblazer. Another Voucher was executed on June 20, 2008, for $1.00. Mr. Sullivan explained that this was done to extend the lien on the Trailblazer and continue it as collateral for Mrs. Massey's loans. The number of payments and payment amount were also modified from the original terms of the Trailblazer loan. This Voucher included the same acknowledgment and cross-collateralization clause included in the May 2008 and 2005 Vouchers. Mrs. Massey's initials and the date "6/20/08" appear at the bottom of Page 2.

Mr. Sullivan estimated that the retail value of the Trailblazer prior to bankruptcy, assuming mileage of 85,000, was approximately $ 9,650, according to the NADA Appraisal Guide. He noted that the Debtors' schedules listed the value of the vehicle and claimed exemption at $ 8,800, based upon the actual mileage of 60,000. He stated that the vehicle loan was paid off prior to the Masseys filing bankruptcy.

---

[1]This is the description given to the loan by Telcoe and Mr. Sullivan, although this term does not appear on any of the loan documents themselves. The Court finds this to be a curious title, given the fact that the Voucher included an acknowledgment that the loan included a cross-collateral provision.

Mrs. Massey testified that she took out the loans from Telcoe, but that the only loan documents she remembered signing and believed to actually bear her signature were the original loan application in 1990, and the Application dated June 16, 2005. She stated that she did not believe the other loan documents regarding subsequent loans bore her actual signature, although she appeared to acknowledge that she did sign and initial the June 20, 2008, Voucher. She testified that she did not remember signing the documents for Telcoe, and did not know who might have signed them if she did not. She did not dispute that she requested, received and used the funds from the loans, nor that she made payments. She stated that she conducted most of her business with Telcoe over the telephone, and that Telcoe employees would send loan documents for her signature through the mail to her. Sometimes she sent them back and sometimes she did not, but she received the funds whether or not she sent the paperwork back.

Mrs. Massey also testified that she was receiving psychiatric treatment and was on medication for anxiety and depression, since 2008. In 2008, at the age of 50 years, she was forced to retire from AT&T because of her illnesses. Her objection to Telcoe's motion was that she paid off the Trailblazer loan and would not have borrowed additional funds from Telcoe had she known the vehicle secured the other loans. Mr. Sullivan disputed her testimony that loan funds would be paid whether or not she signed the loan documents. He stated that the practice of Telcoe was to issue the loan proceeds once the documents were signed and sent to Telcoe. He also stated that over sixty percent of Telcoe's members reside outside of Little Rock, Arkansas, where Telcoe's office is located, and that most of them conduct business with Telcoe by mail, fax or email.

This Court does not find Mrs. Massey's testimony that the loan documents do not contain her actual signature to be credible. She stated that she did not remember signing the documents but

she also stated that sometimes she signed the documents sent to her and sometimes she did not. The Court notes that her signature is similar on all of the documents presented, including the one from 1990. It is not unusual for a person's signature to vary somewhat over the course of nearly twenty years. She testified that she remembered receiving the documents from Telcoe, but did not remember if she signed and sent them back. The Court believes that the more likely scenario is that described by Mr. Sullivan: that the loan proceeds were issued once the signed documents were returned by Mrs. Massey. In addition, Mrs. Massey admits to signing the 1990 and the 2007 Credit Applications, and the June 20, 2008 Voucher. Both credit applications include provisions that grant Telcoe a security interest in and impress a lien on her accounts, present and future. The 2008 Voucher contains a cross-collateralization clause, as does her MasterCard Disclosure Statement issued on April 13, 2007. And, the lien on the Trailblazer was never released by Telcoe, nor does it appear that Mrs. Massey ever asked for it to be released once that particular loan was paid off.

Based upon this evidence, the Court finds that the terms and conditions of Mrs. Massey's loans with Telcoe included valid cross-collateralization clauses and that the 2005 Chevy Trailblazer was pledged as security for the signature loan and MasterCard loan. Telcoe's lien is noted on the title of the Trailblazer. Debtors do not dispute that these loans were in default at the time bankruptcy was filed. Therefore, Telcoe is a secured creditor and is entitled to relief from the stay and abandonment, pursuant to 11 U.S.C. §§ 362 and 554. The Trustee has previously filed his Report abandoning any interest in this property. Therefore, the Motion seeking relief from the stay should be granted, and Telcoe shall be allowed to proceed to collect its debts as against its collateral. Proceedings in aid of execution by Telcoe shall not be deemed to be a violation of the discharge injunction. Should the vehicle be sold for an amount in excess of Telcoe's secured claim, plus costs and attorney fees as

provided for under Mrs. Massey's loan documents, the proceeds shall be paid to the Debtors.

Further, because the Court has found that the vehicle is subject to a valid, perfected security interest and serves as collateral for Mrs. Massey's debts to Telcoe, the Court finds that the Debtors may not claim the Trailblazer as exempt property as against Telcoe under Okla. Stat. tit. 31, § 1. A claimed exemption under Oklahoma law has no effect on consensual liens, such as mortgages and security interests. *In re Innis*, 181 B.R. 548, 551 (N.D. Okla. 1987), citing *Keist v. Cross*, 1926 OK 354, 247 P. 85.

IT IS THEREFORE ORDERED that Creditor Telcoe Federal Credit Union's Motion for Abandonment and Relief from Stay (Docket Entry 14) is **granted.** Telcoe may proceed to repossess the Chevy Trailblazer, and any proceeds in excess of the amount owed by Mrs. Massey to Telcoe shall be paid to the Debtors.

IT IS FURTHER ORDERED that Telcoe's Objection to Debtors' Claim of Exemptions as against Telcoe (Docket Entry 18) is **granted**.

###